UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

LISA GUFFEY
  1311 Woodside Pkwy.
  Silver Spring, MD 20910,

CHRISTINE SMITH
  7509 Ashby Lane, Unit D
  Alexandria, VA 22315,

                          Plaintiffs,

         v.

JAMES C. DUFF, in his official capacity as
Director of the Administrative Office of the
United States Courts,
  One Columbus Circle NE
  Washington, DC 20544,

                          Defendant.

No. 18-cv-_____

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Violation of First Amendment rights)

**INTRODUCTION**

1.     The Administrative Office of the U.S. Courts ("AOUSC") provides legislative, legal, financial, technology, management, administrative, and program support services to the federal judiciary. AOUSC employees carry out a variety of tasks in support of the judiciary, such as ensuring that federal public defender programs are well-run and that information technology systems are secure, but AOUSC employees do not themselves decide individual cases or participate in any way with the decision process (in contrast to, for instance, a judge's law clerks). Nonetheless, the AOUSC Director, Defendant James C. Duff, has barred all AOUSC employees — from the human resources specialist to the facilities manager, from the budget analyst to the

employees in charge of maintaining the public electronic records system (PACER) — from a broad range of political activities that are open to virtually all other federal employees, including expressing their personal views publicly or on social media about partisan candidates for office, attending events for political parties or party candidates, joining a political party, and making donations (however small) to parties or partisan candidates. Because many partisan candidates are candidates for reelection to offices they currently hold, the ban on AOUSC employees' speech regarding candidates encompasses in some instances speech about AOUSC employees' own currently-serving elected officials.

2.      The activities from which AOUSC employees are banned are at the heart of their First Amendment rights to express their views and participate in our democratic process. Although the government has some ability to regulate the speech of its employees, it must justify blanket limits on public employee speech by showing a real and concrete threat to governmental operations. The AOUSC has come nowhere close to making such a showing or to identifying any real or threatened issue of actual or perceived corruption. Indeed, in light of AOUSC employees' distance from the work of deciding actual cases, it is difficult to imagine how employees of the AOUSC could impose a partisan agenda on the work of the judiciary even if they wanted to.

3.      Under the Hatch Act, most federal employees labor under some degree of limitation regarding their political activities. But the restrictions now applicable to AOUSC employees exceed even those applicable to law enforcement officers of the FBI, intelligence analysts at the CIA, and staff of the FEC — the federal agency that regulates elections themselves. Under the Hatch Act, Special Counsel Robert S. Mueller III can contribute funds to President Trump's primary or general-election challengers for reelection; the new AOUSC Code prohibits an AOUSC facilities manager from doing the same.

4.     The vague and speculative interests that the AOUSC asserts in support of its restrictive Code are far outweighed by AOUSC employees' First Amendment rights to engage in core political speech and association. Plaintiffs therefore ask this Court to enjoin the enforcement of the AOUSC's extreme and unwarranted prohibitions.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim arises under the Constitution and laws of the United States.

6.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts complained of occurred in this District.

## PARTIES

7.     Plaintiff Lisa Guffey is a Supervisory Attorney Advisor with the AOUSC. During her lengthy career in public service, she has managed a clinical program at The George Washington University Law School, represented indigent clients in local and federal courts with the Special Litigation Division of the Public Defender Service for the District of Columbia, volunteered with the American Bar Association's Central Europe and Eurasian Law Initiative as a rule of law liaison to the Republic of Azerbaijan (one-year residence in Baku), and served as a Lieutenant Commander in the Judge Advocate General's Corps of the United States Navy. In addition to distinguished military service medals and other performance awards throughout her career, she has received the AOUSC's superior performance award each year since 2015, as well as the 2017 Defender Services Office VIP Award. Before serving in her present position, her political activities have never been as restricted as they are now.

8.     Plaintiff Christine Smith is a Defender Services Office IT Liaison with the AOUSC. Prior to her current position at the AOUSC, Ms. Smith worked for nine years at the Department of

Defense, where she served in IT and policy capacities for the Department of Army and then the Office of the Secretary of Defense for Policy, including work designing and implementing an IT governance model which was duplicated across the Department, setting up U.S. Cyber Command, advising the military advisor to the U.S. Ambassador to Pakistan on U.S.-Pakistani relations, and managing a $1 trillion portfolio of foreign partnerships in counterterrorism efforts. She is the recipient of the Global War on Terrorism Medal from the Secretary of Defense for her support to Operation Enduring Freedom, and she holds a Top Secret/SCI clearance. Before serving in her present position, her political activities have never been as restricted as they are now.

9.      Defendant James C. Duff is the Director of the AOUSC. He is sued in his official capacity only.

## FACTS

### The AOUSC and the Plaintiffs' jobs

10.     Created in 1939, the AOUSC provides "legislative, legal, financial, technology, management, administrative, and program support services to federal courts."  U.S. Courts, Judicial Administration, *at* http://www.uscourts.gov/about-federal-courts/judicial-administration. In service of this mission, AOUSC employees carry out a variety of tasks in support of the federal judiciary, but they do not themselves decide individual cases or participate in the decisional process (in contrast to, for instance, a judge's law clerks).

11.     Outside of its "executive offices," the AOUSC consists of three departments: Technology Services, Administrative Services, and Program Services.

12.     The offices within Technology Services are Technology Solutions, IT Security, Systems Deployment and Support, Cloud Technology and Hosting, Infrastructure Management, and AOUSC Technology.

13.     The offices within Administrative Services are Human Resources, Finance and Procurement, Facilities and Security, and Administrative Systems.

14.     The officers within Program Services perform the following functions: The Judicial Services Office supports the needs of judges and their staff, such as by coordinating travel, and conducts assessments of the judiciary's workload and staffing needs. The Court Services Office manages services related to court administration and case management, including providing day-to-day operational support for the federal courts. The Defender Services Office manages, oversees, and supports the federal appointed-counsel system, including by providing training and advice to appointed counsel and by developing policies and procedures regarding appointed counsel. The Probation and Pretrial Services Office manages, oversees, and supports the judiciary's probation and pretrial services program, including training, operational support, and development of policies and procedures. The Judiciary Data and Analysis Office provides data analysis and reporting, ensures the judiciary's compliance with data governance standards, and provides technical support. The Case Management Systems Office oversees, supervises, and coordinates case management systems, facilitates the effective use of information technology by the judiciary, and manages the transition to the "Next Generation CM/ECF" system for filing legal papers electronically.

15.     Apart from these three divisions and the Offices of the Director and Deputy Director, the AOUSC also has several "executive" offices: the Office of Audit administers financial audits of the judiciary, the Office of the General Counsel provides legal counsel to employees of the judicial branch, the Judicial Conference Secretariat provides support for the Judicial Conference, the Office of Public Affairs conducts public-relations activities, the Office of Legislative Affairs is the judiciary's legislative liaison, the Office of Fair Employment Practices

protects against discrimination and promotes diversity at the AOUSC, and the Office of AOUSC Human Resources provides human resources service to AOUSC employees.

16.     Plaintiff Lisa Guffey has worked for the AOUSC since 2010. Her job as a Supervisory Attorney Advisor is to assess whether federal defender offices and court panel attorney programs across the country are properly resourced, operating effectively, and complying with relevant administrative policies and procedures. She has no involvement with the decisions in individual cases before federal judges, and never discusses individual cases with a judge, judicial clerks, court staff attorneys, or anyone else involved in any way in the process of deciding a case. Nor does she have any involvement in the assignment of cases to federal public defenders or decisions by federal public defender offices regarding the handling of any case, including what resources to devote to any case.

17.     Plaintiff Christine Smith has worked for the AOUSC since 2016. As the Defender Services Office IT Liaison, her responsibilities are to make sure that the IT needs of federal public and community defenders are heard, addressed, and budgeted for; to make policy recommendations to a committee of Article III judges regarding cybersecurity; to organize an annual IT conference; and to plan and implement a working group consisting of twelve members of the defender offices she serves for the purpose of determining the offices' IT and cybersecurity-related needs. She never discusses individual cases with judges, judicial clerks, court staff attorneys, federal public defenders, or anyone else involved in any way in the process of litigating or deciding a case. She has no involvement with the proceedings in individual cases, except to the extent that her policies help to ensure a secure system for electronic communications to and from attorneys who serve as counsel on individual cases.

**The new AOUSC Code of Conduct and its justifications**

18.      Employees of the federal judiciary, like their counterparts in the executive branch, face certain restrictions on their political activities.

19.      Prior to March 1, 2018, AOUSC employees (other than a handful of high-level "designated employees") were permitted to engaged in a variety of political activities with regard to both partisan and non-partisan elective offices, including expressing views on political subjects publicly, displaying political signs and badges while off duty, contributing to political parties and partisan candidates for office, joining political parties, and attending political fundraisers. With respect to state and local (but not federal) elective offices, AOUSC employees (other than "designated employees") were also permitted to endorse or oppose partisan candidates for office, drive voters to polls on behalf of parties or partisan candidates, and organize fundraisers.

20.      On March 1, 2018, Defendant Duff, acting on his own authority, implemented a new Code of Conduct for the AOUSC.

21.      Under the new Code of Conduct, which added complete prohibitions on "partisan political activity" and "mak[ing] speeches for or publicly endors[ing] or oppos[ing] a partisan political organization or candidate," and based on the interpretive guidance issued by Defendant Duff defining the term "partisan political activity," the following political activities (among others) are forbidden for all AOUSC employees, even when an AOUSC employee is off duty, not using government facilities, and not identifying herself as an AOUSC employee:

      a.  expressing opinions publicly, including on social media or via articles or letters to the editor, regarding a political party or partisan candidate for office;

      b.  wearing or displaying partisan political badges, signs, or buttons;

      c.  driving voters to polls on behalf of a political party or partisan candidate for office;

      d.   contributing funds to a political party, political action committee, or partisan

          candidate for office;

      e.   attending partisan fundraisers;

      f.   being a member of a partisan political organization (other than registering as a

          member of a party for voting purposes);

      g.   attending events for a partisan candidate for office;

      h.   organizing events for a partisan candidate for office; and

      i.   attending party conventions, rallies, or meetings.

These nine prohibitions will be referred to as the "Identified Restrictions."

22.    Additional restrictions, not at issue here, apply to "designated employees," now defined as the Director, the Deputy Director, and the AO Executive Management Group.

23.    By way of comparison, of the nine types of political activity barred under the Identified Restrictions, eight of them are permitted under the Hatch Act for ordinary *executive-branch* employees as long as the employees are not engaging in these activities on duty, in uniform, in a government room or building, or using government property; the ninth (contributing funds) is restricted only as to political action committees and then only partially. Seven of the nine Identified Restrictions are permitted in some manner even for "further restricted" executive-branch employees such as FBI agents, CIA analysts, DOJ prosecutors, and FEC staff.

24.    Federal public defenders, who like AOUSC staff are part of the judicial branch, are not generally subject to the Identified Restrictions as long as they are off-duty and outside of the workplace. Specifically, Canon 7 of the defenders' Code of Conduct prohibits defenders from running for or holding partisan elective office, soliciting partisan political contributions, or engaging in "political activity" using federal resources, while on duty or in the workplace, while

using their position or title, or if it will "detract from the dignity of the office or interfere with the proper performance of official duties." Otherwise, "political activity" — defined to include "displaying campaign literature, badges, stickers, signs or other items of political advertising on behalf of any party, political committee, or candidate for political office and soliciting signatures for political candidacy or membership in a political party" — is permitted.

25.     The restrictions in the new AOUSC Code of Conduct were introduced to AOUSC employees by Defendant Duff via a memorandum dated July 10, 2017. That memorandum identified the reasons for imposing the new restrictions as: (1) sending the message to the courts conveying "the unity of purpose between the AO and the courts" and demonstrating "that the AO is very much an integral part of the Judicial Branch and not an independent, isolated agency"; and (2) "to align ourselves more consistently with the Court Code," i.e., the Code of Conduct that applies to judges.

26.     Between the issuance of the July 10 memorandum and the effective date on the Code on March 1, 2018, Plaintiffs Guffey and Smith, along with other colleagues, expressed concern to Defendant Duff and other top agency officials regarding the extent of the curtailment of their political speech rights and questioning whether these restrictions were necessary.

27.     Plaintiffs' internal advocacy did not result in changes to the Code revisions, and the new Code took effect on March 1, 2018.

28.     On March 21, 2018, Plaintiffs Guffey and Smith wrote Defendant Duff, via counsel, to ask that the Identified Restrictions be rescinded because they violate Plaintiffs' First Amendment rights.

29.     On March 30, Defendant Duff replied by letter, defending the Code provisions as "necessary to maintain the public's confidence in the Judiciary's work" — an interest that he

believed "extended beyond" the interest in "prevent[ing] the appearance of corruption in the Legislative and Executive Branches."

30.     The three interests identified by Defendant Duff, two in his July 2017 memorandum and one in his March 2018 letter, are the only interests that have been proffered to justify the sweeping restrictions of the new Code.

31.     Even in response to Plaintiffs' letter, which urged Defendant Duff to call to Plaintiffs' attention "any facts or circumstances of which you think we should be aware and which bear on the constitutionality of the Code restrictions," Defendant Duff could muster no concrete examples demonstrating the necessity of the Identified Restrictions.

32.     To Plaintiffs' knowledge, based on Defendant Duff's explanations over the course of the past year, and on information and belief, the Identified Restrictions will not prevent any actual and concrete harm to the operations of the AOUSC in any direct and material fashion.

33.     What the Identified Restrictions will prevent, if they remain in place, is a large swath of political activity at the heart of what the First Amendment protects: expressing one's views publicly about candidates and elections for our country's most powerful political offices, associating and gathering with others for the purpose of advocating one's desired results in these elections, giving money (within generally applicable limits) to candidates for these offices, and more.

34.     At least one of the Plaintiffs desires to engage in each of these forms of participation and would do so if not for the Identified Restrictions.

**Plaintiffs' history of political participation and intended future participation**

35.     Plaintiff Lisa Guffey places a high value on participation in the political system. She has throughout her life participated in the democratic process in a variety of ways, including

expressing political opinions publicly (including via social media like Facebook), displaying political bumper stickers and buttons, contributing funds to political parties and party candidates, attending events and fundraisers for candidates, and joining a political party.

36.     Ms. Guffey's past political activities include donating money to a national party committee and to individual party candidates, posting yard signs for partisan candidates for local office, attending fundraising events for partisan candidates for local office, and expressing opinions about political candidates on social media.

37.     Ms. Guffey would like to continue to engage in each of these forms of political activity with respect to the Maryland gubernatorial race in 2018, the U.S. Presidential election of 2020, and likely other races as well. In addition to the activities in which she has engaged in the past, she would like to volunteer to drive voters to polls on behalf of her preferred candidates and to attend party meetings or conventions with respect to these elections. She intends to engage in all of these activities if she is permitted to do so.

38.     Ms. Guffey would be engaging in some of her intended political activities already — specifically, giving money to a national party committee and a PAC — if not for the AOUSC's Code of Conduct provision that forbids "partisan political activity."

39.     On February 21, 2018, Robert Deyling and Michael Delman of the AOUSC's Office of General Counsel met with a group of AOUSC staff on behalf of the Office of General Counsel to answer staff questions about the new Code.

40.     On March 1, 2018 (the day the new Code went into effect), Ms. Guffey emailed Mr. Deyling and Mr. Delman to ask whether she could accept an invitation to a March 3 reception to meet a Maryland gubernatorial candidate. She did not receive a response prior to March 3, and so she did not attend the reception. In any case, Mr. Deyling, who is Assistant General Counsel

for AOUSC, responded by email on March 8 that "Attendance at a reception for a partisan political candidate (regardless if it is local, state, or federal) is not permitted."

41.     Ms. Guffey's March 1 email further inquired whether she could attend "future events of this type in order to educate myself on the best choice for my vote for Governor and other offices" and whether she could donate to a national party committee or to partisan candidates at the local, state, and federal levels. Mr. Deyling's response indicated that all of these activities are forbidden by the Code.

42.     Mr. Deyling's March 8 email to Ms. Guffey further stated that "Violations of the Code may subject an employee to disciplinary action."

43.     Plaintiff Christine Smith has throughout her life participated in the democratic process in a variety of ways, including expressing political opinions publicly about candidates and parties (including via social media like Facebook), displaying political bumper stickers and buttons, driving voters to polls on behalf of a political party, contributing funds to candidates, contributing funds to a political party, attending and organizing fundraising events for candidates, and joining a political party. In particular, she volunteered as the Volunteer Coordinator for a partisan city council campaign in Toledo, Ohio, in 2006, where she coordinated the activities of more than 100 volunteers, canvassed neighborhoods, put up posters, made calls, and worked at polling places. She also attended and organized fundraising events for her chosen candidate in that race.

44.     Ms. Smith regularly makes small (under $500) donations to candidates (or potential candidates) at the local, state, and national levels who support the ideals that she believes in. She has volunteered her time to drive people to the polls on election day. She has displayed signs for candidates. She wears t-shirts that she has purchased from candidates (her own representatives or

officials from other states) whom she feels represent her beliefs and the causes that she stands for. The money from such purchases helps fund these candidates' campaigns. She regularly expresses her opinions on Facebook about national policies and politicians regarding immigration, healthcare, the national budget, foreign policy, and nuclear policy, among other issues.

45.      Ms. Smith would like to continue to engage in political activity with respect to partisan candidates, and she would do so if not for the AOUSC's new Code of Conduct. The specific activities in which she would participate, if permitted, include all of the types of activities she has done in the past, especially posting on Facebook about political parties and candidates, displaying signs, wearing t-shirts publicly, donating money to candidates, attending and organizing candidate events, and driving voters to the polls. She would also like to attend a future national party convention. She is particularly interested in these activities with respect to the 2018 Congressional races, the 2020 Presidential campaign, and the 2021 Virginia gubernatorial campaign.

46.      The AOUSC's Code of Conduct has already deterred Ms. Smith from participating in political activity. Because of the restriction on "opposing … a political party or candidate for partisan political office," Ms. Smith has already refrained from commenting on Facebook about particular partisan candidates whom she would like to criticize publicly because they endorse policies or hold positions that she disagrees with. For instance, if not for the Code, Ms. Smith would currently be expressing views about a 2020 Presidential candidate on Facebook. Due to the restriction on donations, Ms. Smith has refrained from donating funds to her current senator's reelection campaign.

47.      On March 1, 2018, Ms. Smith emailed Mr. Deyling and Mr. Delman of the AOUSC's Office of General Counsel to ask whether she could in the future continue volunteering

for political campaigns, providing rides to voters, donating money, and expressing views on political parties and candidates on Facebook. Assistant General Counsel Deyling responded by email on March 8 that "volunteering for a partisan political campaign is not permitted," that "[d]riving people to the polls is permitted, provided that it is not on behalf of a political party or partisan political candidate," that "[a]n employee may not make a contribution to a partisan political candidate," and that "[p]ublicly opposing or endorsing a political party or candidate for partisan political office on social media is not permitted."

48.    Mr. Deyling's March 8 email to Ms. Smith further stated that "A violation of the Code may subject the employee to disciplinary action."

49.    The Identified Restrictions of the AOUSC Code of Conduct limit employees' speech and expressive activity in a manner that greatly outweighs any legitimate interest that the AOUSC may have in prohibiting those activities.

## CLAIMS FOR RELIEF

### Claim I: FIRST AMENDMENT FREEDOM OF SPEECH

50.    Each of the Identified Restrictions of the AOUSC Code of Conduct, as that Code is interpreted and threatened to be enforced by Defendant Duff, violates the rights of the Plaintiffs as applied to the category of AOUSC employees (other than "designated employees") under the First Amendment to the United States Constitution.

### Claim II: FIFTH AMENDMENT DUE PROCESS

51.    In the alternative, the term "partisan political activity" in the AOUSC Code of Conduct is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

**REQUESTED RELIEF**

Wherefore, Plaintiffs respectfully request that the Court:

A.     DECLARE pursuant to 28 U.S.C. § 2201 that the Identified Restrictions of the AOUSC Code of Conduct cannot be enforced against Plaintiffs or any AOUSC employees other than "designated employees" because the Identified Restrictions violate the First Amendment as applied to AOUSC employees other than "designated employees" and/or because the term "partisan political activity" in the AOUSC Code of Conduct is unconstitutionally vague under the Due Process Clause of the Fifth Amendment;

B.     ENJOIN Defendant, his employees, agents, successors and assigns, and all persons acting in concert with him, from continuing to enforce the Identified Restrictions of the AOUSC Code of Conduct against Plaintiffs or any AOUSC employees other than "designated employees."

C.     AWARD Plaintiffs their costs and reasonable attorneys' fees in this action.

D.     GRANT such other and further relief as to the Court appears just and proper.

May 31, 2018                                      Respectfully submitted,

                                                 /s/ Scott Michelman
                                                 Scott Michelman (D.C. Bar No. 1006945)
                                                 Arthur B. Spitzer (D.C. Bar No. 235960)
                                                 American Civil Liberties Union Foundation
                                                   of the District of Columbia
                                                 915 15th Street NW, Second Floor
                                                 Washington, DC 20005
                                                 (202) 457-0800
                                                 smichelman@acludc.org

                                                 *Attorneys for Plaintiffs*