## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| LISA GUFFEY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRISTINE SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 18-1271 (CRC) |
| v. | ) | |
| | ) | |
| JAMES C. DUFF, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

Plaintiffs filed this action under the First and Fifth Amendments alleging that their rights have been violated by Defendant's decision to update the Code of Conduct for employees of the Administrative Office of the United States Courts (AO) in July 2017, which places the same restrictions on their partisan political activities that apply to other judicial branch employees. Plaintiffs also moved for the entry of a preliminary injunction prohibiting Defendant from enforcing certain restrictions on partisan political activity in the revised AO Code of Conduct against themselves and all other AO employees (except the Director, Deputy Director, and the four employees of the AO Executive Management Group).

Plaintiffs' motion for a preliminary injunction should be denied.  They have failed to meet their heavy burden of establishing an entitlement to preliminary injunctive relief.  First, Plaintiffs are unlikely to succeed on the merits of their claims.  Plaintiffs do not have an absolute

right to associate or participate in political activities.  As employees of the federal government,

Plaintiffs concede, as they must, that the government has more latitude to regulate their speech

than the speech of the citizenry in general.  It is settled law that the Constitution does not prohibit

restrictions on partisan political conduct by federal employees.

When restricting the political activity of its employees, the government must balance the

interests of an employee to comment upon matters of public concern with the interest of the

government in regulating the conduct and speech of its employees.  The revised AO Code of

Conduct properly strikes this balance by incorporating the same restrictions on political activity

from the Code of Conduct for Judicial Employees (Employees' Code) for its own governing

principles.  The restrictions in the Employees' Code were approved by the federal judges of the

Judicial Conference of the United States and apply to judicial employees across the country.

Plaintiffs' claim that the revised AO Code of Conduct is based on the political activity

restrictions in the Code of Conduct for United States Judges (Judges' Code) is simply wrong.

For almost all AO employees (except for the Director, Deputy Director, and members of the AO

Executive Management Group), the revised AO Code of Conduct adopts the less restrictive

standard on political activity from the Employees' Code.  Unlike the prohibition on political

activity in the Judges' Code, or the more restrictive standard on political activity in the

Employees' Code for members of a judge's personal staff (such as law clerks), the revised AO

Code of Conduct permits Plaintiffs to engage in nonpartisan political activity.  With respect to

partisan political activity, the revised AO Code of Conduct catches up to and imposes the same

ethical restrictions on Plaintiffs and other AO employees that apply to all other judicial

employees in federal courts nationwide regardless of their job responsibilities.  These rules were

approved of by federal judges on the Judicial Conference's Committee on Codes of Conduct

before being adopted by the Judicial Conference.  By allowing for nonpartisan political activity while limiting partisan political activity of employees, the revised AO Code of Conduct appropriately balances the First Amendment rights of employees to comment on matters of public concern with the judiciary's interest in regulating the speech of its employees in order to preserve the integrity and impartiality of the judicial branch.

Plaintiffs' comparison of the revised AO Code of Conduct to the Hatch Act, which restricts the political activities of executive branch employees, is misplaced.  The fact that employees of the executive branch, who work for an elected official, are not subject to the same restrictions on political activity that apply to employees of the judiciary is not relevant to the constitutional analysis.  The judiciary has a compelling interest in preserving the public's confidence in its integrity and impartiality, and the AO is an integral part of the judicial branch. As such, Defendant must be able to implement ethics requirements for AO employees that align with the ethics rules for all other judicial employees who work in federal courthouses across the country, including the restrictions on partisan political activity even though such activity may be permissible for those who work for the executive branch.  The public's confidence in an impartial judiciary will be tainted if it believes that the employees who work for the judicial branch are driven by partisan political interests.  The revised AO Code of Conduct furthers this compelling interest of maintaining the public's confidence in the integrity of the judiciary by narrowly tailoring restrictions that allow employees to engage in nonpartisan political activity while limiting employees' ability to engage in partisan political activity.

Plaintiffs' argument that the restrictions in the revised AO Code of Conduct are not necessary to further the judiciary's compelling interest because the ethics rules governing federal public defender employees (including those federal public defender employees who were

temporarily assigned to the AO prior to the effective date of the revised AO Code of Conduct)

permit certain partisan political activities is similarly unavailing.  Defendant does not have the

authority to prescribe ethics rules for federal public defender employees.  Only the Judicial

Conference, acting through its Committee on Codes of Conduct, has the authority to develop

ethics requirements for federal public defender employees.  Moreover, unlike other employees of

the judiciary, federal public defender employees serve as advocates for criminal defendants

rather than as neutral and impartial arbiters of disputes.  Given their unique role in the judicial

branch, the judiciary's interest in regulating their political speech is fundamentally different and

more akin to the interest that the government has with respect to employees of the executive

branch.  In light of this difference, the Judicial Conference, and its Committee on Codes of

Conduct, has developed ethics rules for federal public defender employees that differ in some

respects (especially as it relates to political activity) from the ethics rules that govern other

judiciary employees.  This demonstrates that the restrictions on political activity are tailored to

further the compelling interest of safeguarding the public's confidence in the federal judiciary.

Plaintiffs have also failed to show that they will suffer any irreparable injury if an

injunction is denied.  Because Plaintiffs are seeking to alter, rather than preserve, the status quo

by requesting a preliminary injunction to prohibit Defendant from enforcing restrictions that are

already in effect, they must meet a higher standard than in an ordinary case and show that

extreme or very serious damage will result from the denial of the injunction.  Plaintiffs only

claim of irreparable harm in the absence of preliminary injunctive relief is the "lost

opportunities" for them to participate in partisan political activity.  This alleged injury does not

meet the higher standard needed to obtain a preliminary injunction that would alter the status

4

quo, especially given that Plaintiffs do not have an absolute right to associate or participate in political activities.

By contrast, the entry of a preliminary injunction would cause concrete harm to the judiciary and the public interest.  The judiciary clearly has a compelling interest in maintaining the public's confidence in its integrity and impartiality.  Defendant must be able to enforce ethical restrictions on the partisan political activities of AO employees to further the judiciary's compelling interest.  Without public confidence in the integrity of the judicial system, the authority of the judiciary will be eroded.  It is not in the public interest to effectively rescind the restrictions on partisan political activity that the AO has adopted to preserve the public's confidence in the integrity of its work until a trial on the merits can be held.

Consequently, this Court should deny Plaintiffs' motion for a preliminary injunction.

## FACTUAL BACKGOUND

The Administrative Office of the United States Courts is supervised by a Director and a Deputy Director, who are appointed and subject to removal by the Chief Justice of the United States following consultation with the Judicial Conference.  *See* 28 U.S.C. § 601.  The Director has the authority to "make, promulgate, issue, rescind, and amend rules and regulations (including regulations prescribing standards of conduct for Administrative Office employees) as may be necessary to carry out the Director's functions, powers, duties and authority."  28 U.S.C § 604(f).

As Director, Defendant undertook a review of the AO's policies and procedures. Plaintiffs' Ex. A.  His review revealed that the AO Code of Conduct had not been updated in nearly 20 years.  *Id.*  In contrast, the Code of Conduct for Judicial Employees had been revised and updated to reflect changing circumstances.  *Id.*  To align the AO Code of Conduct more consistently with the Code of Conduct for Judicial Employees, the AO drafted a revised Code of

Conduct for its employees that emulated the restrictions on political activity found in the Employees' Code. *Id.* The Employees' Code includes two standards for political activity: "one for court staff, such as clerks' office staff and pretrial/probation staff; and a much more restrictive standard for chambers' staff and court unit executives." *Id.*

On July 10, 2017, Defendant announced in a memorandum to all AO employees that he was "prepared to implement the revised Code but the revisions will not take effect until January 1, 2018, to allow time for your adjustments to the changes and for any questions you might have." *Id.* The memorandum to all employees explained that the revised AO Code of Conduct "will align with the less restrictive standard [on political activity] that applies to court staff." *Id.* The memorandum further stated that the AO's Executive Management Group "will be aligned with the more restrictive standard that applies to chambers' staff and court unit executives" under the revised AO Code of Conduct. *Id.* Finally, the memorandum emphasized "that under the revised AO Code…non-partisan activities remain permissible. Community and civic engagement are not intended to be curtailed and are, in fact, encouraged." *Id.*

On December 4, 2017, Defendant issued a new memorandum to all AO employees regarding the revised AO Code of Conduct. Declaration of Gary A. Bowden ¶ 5. This memorandum changed the effective date of the revised AO Code of Conduct from January 1, 2018 to March 1, 2018 to coincide with the effective date of the Federal Judicial Center's identical restrictions for its employees. *Id.* It also provided employees with an opportunity to submit questions or comments on the revised AO Code of Conduct. *Id.* On March 1, 2018, the revised AO Code of Conduct took effect. *Id.* at ¶ 6. Plaintiffs did not file their complaint and move for a preliminary injunction until May 31, 2018. ECF Nos. 1-2.

## LEGAL STANDARDS FOR A PRELIMINARY INJUNCTION

It is well settled that injunctive relief is an extraordinary remedy, and the party seeking it has a substantial burden of proof. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20, 24 (2008). As this Court recently noted, "[a] preliminary injunction is 'an extraordinary and drastic remedy, [and] one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *AARP v. U.S. Equal Emp't Opp. Comm.*, 226 F. Supp. 3d 7, 8 (D.D.C. 2016) (*quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1977) (per curiam) (internal quotation marks and emphasis omitted)). To be entitled to the extraordinary remedy of emergency injunctive relief, a plaintiff must meet this strict burden by showing that: (1) there is a substantial likelihood of prevailing on the merits of his or her claims; (2) a preliminary injunction is necessary to prevent him or her from suffering irreparable harm; (3) the threatened injury to the plaintiff outweighs the possible harm to others; and (4) the public interest favors the issuance of the injunction. *Winter*, 555 U.S. at 20; *see, e.g., Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011); *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009). The United States Court of Appeals for the D.C. Circuit has held that "'[w]hen seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (*quoting Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)).

Until the Supreme Court's decision in *Winter* in 2008, the four factors for a preliminary injunction were analyzed on a sliding scale, such that relief could be granted if there was a strong showing on one factor and a lesser showing on one of the other factors. *Davis*, 571 F.3d at 1291. In *Winter*, however, the Supreme Court appeared to reject the notion that a strong showing on one factor could allow the plaintiff to make a lesser showing on another factor. *Winter*, 555 U.S. at 21. The Court of Appeals for the D.C. Circuit has yet to decide whether the sliding scale

analysis survives the decision in *Winter*.  *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (noting that the D.C. Circuit has not yet needed to decide this issue).

This Court, however, need not resolve this question because Plaintiffs must meet an even higher standard to obtain preliminary injunctive relief here.  Where preliminary injunctive relief would alter, rather than preserve the status quo, this Court has required the moving party to show an entitlement to relief or that extreme or very serious damage will result if an injunction is denied.  *See Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (purpose of preliminary injunction is merely to preserve the relative positions of the parties until trial on the merits can be held).  Notably, Plaintiffs were notified of the restrictions in the revised AO Code of Conduct in July 2017, but they did not seek to enjoin the enforcement of those restrictions until May 2018, after its implementation.  Bowden Declaration at ¶ 4.  Given the lapse in time, Plaintiffs should not be permitted to alter the status quo before a trial on the merits given that they have not shown that they are clearly entitled to relief or even argued that extreme or very serious damage will result from the denial of the injunction.

Even if Plaintiffs are not required to meet the higher standard for preliminary injunctive relief, their claim of irreparable injury is wholly dependent upon achieving success on the merits of their claim that their First Amendment rights have been violated.  Because Plaintiffs do not have a likelihood of success on their claim that their First Amendment rights have been violated, they cannot demonstrate any irreparable injury.

<u>**ARGUMENT**</u>

I.      **Plaintiffs Have Failed to Demonstrate that They are**
        <u>**Likely to Succeed on the Merits of this Case.**</u>

Plaintiffs have not demonstrated that they are clearly entitled to relief or are likely to succeed on the merits.  The argument that the revised AO Code of Conduct's restrictions on their partisan political activities violates their First Amendment rights is contrary to settled law.  The Supreme Court has held that the government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968).  When regulating the speech and conduct of its employees, the government must balance its interest against the interests of the employees, as citizens, to comment on matters of public concern.  *Id*.  Moreover, as the D.C. Circuit has noted, "the Court has 'consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large.'"  *Wagner v. FEC*, 793 F.3d 1, 6-7 (D.C. Cir. 2015) (en banc) (quoting *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 676 (1996) (internal quotation marks omitted)).  Indeed, there is a long history of the Court upholding restrictions on the partisan political activity of federal employees against claims that such restrictions are unconstitutional. *See, e.g., United Pub. Workers v. Mitchell*, 330 U.S. 75 (1947).

The restrictions in the revised AO Code of Conduct on partisan political activity do not need to mirror the requirements of the Hatch Act or other restrictions imposed upon the political activities of municipal employees, such as firefighters or teachers, to pass constitutional muster. The judiciary plays a different role in the government than the executive or legislative branches. "Unlike the executive or the legislature, the judiciary 'has no influence over either the sword or

the purse; …neither force nor will but merely judgment.'  The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1666 (2015) (internal citations omitted).  Just as a state's "interest in preserving public confidence in the integrity of its judiciary extends beyond its interest in preventing the appearance of corruption in legislative and executive elections," *see id.* at 1667, the government's interest in restricting partisan political activity by judiciary employees extends beyond its interest in restricting those activities by employees of the executive or legislative branches.  AO employees and judicial employees do not work for elected officials that are expected to be responsive to supporters.  They work for courts that must be viewed as independent and neutral arbiters of justice for our democratic system of government to succeed. Because "justice must satisfy the appearance of justice," more restrictive limits on partisan political activity are necessary for AO employees and other employees of the judicial branch than may be required for employees of the executive or legislative branches.  *Id.* at 1666 (*quoting Offutt v. United States*, 348 U.S. 11, 14 (1954)).  Accordingly, the restrictions on political activity in the revised AO Code of Conduct further the judiciary's heightened interest in protecting the public's confidence in the integrity of its work by aligning the AO with the federal courts it supports.

The revised AO Code of Conduct appropriately balances the interest of the judiciary with the interests of AO employees, as citizens, to comment upon matters of public concern.  Like the important interests served by the limitations in the Hatch Act, safeguarding public confidence in the fairness and integrity of the judiciary is a vital government interest.  *See Williams-Yulee*, 135 S. Ct. at 1666.  Not only is maintaining this public confidence a compelling and vital interest, but "public perception of judicial integrity is 'a state interest of the highest order.'"  *Id.* (*quoting*

*Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 889 (2009)).  Contrary to Plaintiffs' assertion, this is not a "speculative concern."  The Supreme Court has observed that "[t]he concept of public confidence in judicial integrity does not easily reduce to precise definition, nor does it lend itself to proof by document record.  But no one denies that it is genuine and compelling." *Id.* at 1667.

As an integral part of the judicial branch, the AO has a compelling interest in maintaining the public's confidence in the judicial branch as a whole by ensuring that its ethics requirements are aligned with the ethics rules that apply to all other judicial employees in federal courts nationwide.  Balancing this compelling interest with the interests of AO employees, as citizens, to comment on matters of public concern, the revised AO Code of Conduct permits employees to exercise their First Amendment rights by expressing their views on civic or legislative issues.  Plaintiffs remain able, as citizens, to speak out about the important issues of the day and may contribute to nonpartisan organizations even if those organizations take positions on potentially political issues.  Thus, the revised AO Code of Conduct is tailored to address the compelling interest in maintaining a judiciary that is free from any appearance of practicing "political justice" while allowing employees to remain active members of their communities.  *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 565 (1973); *see also Baumann v. District of Columbia*, 795 F.3d 209, 216 (court must consider whether challenged regulation is tailored to address harm that government allegedly aims to protect when performing balancing).

Recognizing that "neither the right to associate nor the right to participate in political activities is absolute in any event," the Supreme Court has concluded that "neither the First Amendment nor any other provision of the Constitution invalidates a law barring…partisan

11

political conduct by federal employees." *Letter Carriers,* 413 U.S. at 556, 566.  In upholding

restrictions on partisan political activity, the Court has not been persuaded by the "argument that

such activities during free time are not subject to regulation even though admittedly political

activities cannot be indulged during working hours." *Mitchell*, 330 U.S. at 94.  For example, the

Court has affirmed the constitutionality of restrictions that prevent federal employees from

holding a party office or working at the polls. *Letter Carriers*, 413 U.S. at 556.  The Court has

also deemed constitutional restrictions on the following partisan political activities by federal

employees:

> [O]rganizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for, an elective public office; actively managing the campaign of a partisan candidate for public office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate or proxy to a political convention.

*Id.*  The Court explained that such restrictions "are not aimed at particular parties, groups, or

points of view, but apply equally to all partisan activities of the type described. …Nor do they

seek to control political opinions or beliefs, or to interfere with or influence anyone's vote at the

polls." *Id.* at 564.  Significantly, the Court has upheld restrictions on political activity by

executive branch employees even when those employees had jobs that required no contact with

the public or the ability to influence policy. *Mitchell,* 330 U.S. at 100-02.

The Court has found that restrictions on political activity by executive branch employees

in the Hatch Act were sustainable because of "the obviously important interests sought to be

served by the limitations…." *Letter Carriers*, 413 U.S. at 564.  Because employees of the

executive branch are "expected to enforce the law and execute the programs of the Government

without bias or favoritism for or against any political party or group or members thereof," the

Court reasoned that "it is essential that federal employees, for example, not take formal positions

in political parties, not undertake to play substantial roles in partisan political campaigns, and not run for office on partisan political tickets." *Id.* at 565.  The Court further acknowledged that "it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent." *Id.; cf. Wagner*, 793 F.3d at 9-10 (referencing these important government interests when reviewing statute prohibiting campaign contributions by government contractors).

Finally, Plaintiffs' argument is not saved by their attempt to compare the revised AO Code of Conduct with the Code of Conduct for Federal Public Defender Employees.  As Director of the AO, Defendant only has the authority to promulgate ethics regulations for AO employees. *See* 28 U.S.C § 604(f).  Defendant does not have the statutory authority to prescribe ethics rules for federal public defender employees.  The Code of Conduct for Federal Public Defender Employees was adopted by the Judicial Conference and it recognizes the unique advocacy role that these employees play in the judicial branch.  The exclusion of federal public defender employees from the restrictions on partisan political activity does not undermine the compelling interest that is served by the revised AO Code of Conduct.  As advocates, federal public defender employees are different from AO employees and other judicial employees who work for the courts rather than for a party.  The judiciary's interest in regulating the political activity of federal public defender employees is therefore different from its interest in regulating the political activity of other judicial employees.

Even assuming that federal public defender employees should be subject to the same restrictions on partisan political activity that apply to other judicial employees, the "First Amendment imposes no freestanding 'underinclusiveness limitation'" *Williams-Yulee*, 135 S.

13

Ct. at 1668 (*quoting R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992) (internal quotation marks omitted)).  The judiciary "need not address all aspects of a problem in one fell swoop." *Id.*  The restrictions in the revised AO Code of Conduct are based on the identical restrictions in the Employees' Code and serve to prevent the partisan political conduct that is most likely to lessen the public's confidence in the integrity of the judiciary.

## II.    Plaintiffs Have Suffered No Irreparable Injury

No injunction may issue in the absence of an "irreparable injury," no matter how strongly the other factors support the movant.  *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).  The moving party bears the burden of establishing that, absent an injunction, it will suffer an injury that is "both certain and great," and that "there is a clear and present need for equitable relief to prevent irreparable harm."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006).

Plaintiffs argue that absent the injunctive relief requested, they will suffer irreparable harm because their constitutional rights will be violated.  Plaintiffs' Mem. at 21.   To be irreparable, the injury "must be certain and great, and actual not theoretical," as is necessary for Article III standing.  *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007).   Further, the injury must be "of such imminence that there is a clear and present need for equitable relief."  *Id.*  (citing *Wisconsin Gas Co.*, 758 F.2d at 674).  As explained *supra*,

Plaintiffs are seeking to alter, rather than preserve, the status quo by requesting a preliminary injunction to prohibit Defendant from enforcing restrictions that are already in effect.  Plaintiffs theoretical claim of "lost opportunities" to participate in partisan activity is too conjectural and inadequate to establish irreparable harm.  For example, there has been no showing that Plaintiffs have been constrained by the AO Code of Conduct in expressing their opinions about issues they deem important outside of the workplace or that they are prohibited from contributing to non-party affiliated organizations that may support those issues.

As stated above, Plaintiffs' alleged injuries do not meet the higher standard needed to obtain a preliminary injunction that would alter the status quo.  Especially given that Plaintiffs do not have an absolute right to associate or participate in political activities.  *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986).  The Defendant's ethical restrictions on partisan activities are narrowly tailored to serve compelling interests in the impartiality and independence of the judiciary, public confidence in the judiciary, and preventing corruption or appearance of corruption.

### III.   Harm to the Government and the Public Interest Favor Denial of a Preliminary Injunction

The remaining two elements of the preliminary injunction analysis also compel denial of Plaintiffs' motion. Those factors require the Court to evaluate the harms others would suffer if the injunction were granted, and to determine whether injunctive relief would promote the public interest. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297; *Serono Labs., Inc*., *v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998).

The entry of a preliminary injunction would cause concrete harm to the judiciary and the public interest.  The judiciary clearly has a compelling interest in maintaining the

public's confidence in its integrity and impartiality.  The Supreme Court has stressed that the appearance of impartiality is critical to the authority of the judicial branch:

> The power and the prerogative of a court [to resolve disputes] rest, in the end, upon the respect accorded to its judgments.  The citizen's respect for judgments depends in turn upon the issuing court's absolute probity.  Judicial integrity is, in consequence, a state interest of the highest order.

*Republican Party of Minnesota v. White*, 536 U.S. 765, 793 (2002); *see also United States v. Mistretta*, 488 U.S. 361, 407 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship.).

Moreover, as noted at the outset, there is a strong public interest in ensuring that the integrity of any type of judicial system is preserved.  This interest would not be served by enjoining the enforcement of reasonable ethical restrictions on the partisan political activities of AO employees.  Without public confidence in the integrity of the judicial system, the authority of the judiciary will be eroded.

Therefore, having failed to properly demonstrate the balance of harms tips in their favor, or that the public interest would best be served by issuance of injunctive relief, Plaintiffs' application should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.

Respectfully Submitted,

JESSIE K. LIU
D.C. BAR # 472845
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By:    /s/_____
        BENTON G. PETERSON, BAR # 1029849
        Assistant United States Attorney
        U.S. Attorney's Office
        555 4th Street, N.W. - Civil Division
        Washington, D.C. 20530
        (202) 252-2534